**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

**2014 MSPB 41**

Docket No. SF-0752-13-0018-I-1

**Jessica Shannon,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

June 5, 2014

Michael W. Franell, Medford, Oregon, for the appellant.

Leigh E. Schwarz, Esquire, Portland, Oregon, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which affirmed her removal. For the reasons set forth below, we GRANT the appellant's petition for review, AFFIRM those parts of the initial decision finding that the agency proved its charge by preponderant evidence, there was a nexus between the charge and the efficiency of the service, and the appellant failed to prove her affirmative defense of harmful procedural error. We VACATE the portion of the initial decision finding that the appellant failed to prove her

whistleblower reprisal claim and REMAND the appeal for further adjudication consistent with this Opinion and Order.

## BACKGROUND

¶2        Effective September 21, 2012, the agency removed the appellant from her position as a Medical Administrative Assistant[1] with the Veterans Administration's Southern Oregon Rehabilitation Center and Clinics (SORCC) based on the following two charges:   (1) inappropriate relationship with a veteran; and (2) failure to follow policy.   Initial Appeal File (IAF), Tab 4 at 15-18.

¶3        In support of the first charge, the agency alleged that, between November 2011 and April 2012, the appellant had a personal relationship with a veteran who resided at the SORCC, evidenced in Facebook messages from February 20, 2012, to April 3, 2012, and personal contact, including a January 6, 2012 encounter with the veteran in the Administrative Officer of the Day (AOD) work area.   IAF, Tab 4 at 36.   The agency stated that the appellant's conduct violated SORCC's Medical Center Memorandum (MCM) 05-002, Patient/Employee Relationships,[2] which requires employees to avoid relationships

---

[1] This position is also called Administrative Officer of the Day (AOD).   Initial Appeal File (IAF), Tab 4 at 16 of 148.

[2] Paragraph 2a of MCM 05-002 provides, in pertinent part:

> Employees shall not engage in any patient/employee relationship outside the boundaries of either assigned duties or professional standards which may result in or give the appearance of:   (1) A personal, emotional, romantic, sexual and/or financial relationship that could influence or affect professional patient care goals or outcomes.   Some examples of unacceptable/inappropriate behavior that could occur in social relationships include, but are not limited to, a staff member taking a patient to a non-sanctioned social event, or transporting patients in employee [sic] personal vehicle, inviting a patient to a staff member's home, the exchange of personal gifts, letters, cards, phone calls and other

that are not conducive to effective veteran care. *Id.* In support of the second charge, the agency alleged that the appellant failed to follow MCM 05-002 by entering into a personal relationship with a veteran resident and reiterated the specification under the first charge. *Id.* at 37.

¶4 The appellant filed a Board appeal of her removal and requested a hearing. IAF, Tab 1 at 3. She raised affirmative defenses of harmful procedural error and whistleblower reprisal. *Id.* at 5-16. After holding a hearing, the administrative judge issued an initial decision that affirmed the appellant's removal. IAF, Tab 17, Initial Decision (ID). The administrative judge merged the two charges based on her finding that proof of the first charge of inappropriate relationship with a veteran, which the agency alleged resulted in a violation of MCM 05-002, necessarily proved the second charge that the appellant failed to follow MCM 05-002. ID at 9. The administrative judge found that the agency proved the charge by preponderant evidence, ID at 10-14; that there is a nexus between the sustained charge and both the appellant's ability to accomplish her duties as well as the legitimate governmental interest of SORCC's ability to treat veterans, ID at 14-15; and that the penalty of removal is reasonable, ID at 23-25. The administrative judge also found that the appellant failed to prove her affirmative defenses. ID at 15-23.

¶5 The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response in opposition to the petition for review. PFR File, Tab 3.

---

items representing expressions of affection and/or sexual interest, sensual and sexual touch is never appropriate.

IAF, Tab 4 at 72.

ANALYSIS

<u>The administrative judge correctly found that the agency proved the charge by preponderant evidence.</u>

¶6    In finding that the agency proved the charge, the administrative judge fully set forth the facts underlying the charge, considered the testimony of witnesses, including the appellant, and made reasoned credibility determinations consistent with the factors for resolving credibility issues set forth in *Hillen v. Department of the Army*, [35 M.S.P.R. 453](), 458 (1987).  ID at 2-14.  The administrative judge found that the appellant was not a credible witness and, therefore, did not credit her testimony.  ID at 10.  More specifically, the administrative judge found that the appellant lacked candor, provided improbable explanations of her conduct, and gave inconsistent statements from the agency's investigation into her conduct through the hearing.  ID at 10.  The administrative judge further found that the evidence clearly contradicts the appellant's version of events and that her denial of an inappropriate relationship with a veteran resident and her claim that she was unaware that her relationship with the veteran was against agency policy were inherently improbable.  ID at 10.

¶7    As to the allegations concerning the appellant's Facebook conversations with the veteran, the administrative judge found that the Facebook messages show that the appellant had an inappropriate relationship with the veteran.  ID at 10.  In support of this finding, the administrative judge noted that, in her Facebook conversations with the veteran, the appellant complained to him about work and the veteran gave her advice and support on how to care for her father and handle him emotionally when he was ill.  ID at 10.  In addition, the administrative judge noted that a few days after a Facebook conversation in which the veteran told the appellant that he had missed her the past 3 days and that he was going to give her a massage with lotion and asked if she would give him a massage that night, the appellant engaged in Facebook conversations with the veteran from her home in which she told him that she was wearing socks, a bra, and underwear.  ID at 11.

¶8      The administrative judge also noted that, while the appellant tried to characterize her relationship with the veteran as trivial during the proceedings in this appeal, she admitted in a Facebook conversation with the veteran that they were spending more than nominal time together. ID at 12. The administrative judge further found that the appellant knew the Facebook exchanges were inappropriate because she stated to the veteran that she hoped no one could read their Facebook messages. ID at 13 (citing IAF, Tab 14 at 101 of 135). The administrative judge determined that the Facebook conversations violated MCM 05-002 because, at a minimum, the exchanges gave the appearance of a personal and emotional relationship between the appellant and the veteran, which is expressly prohibited. ID at 13-14.

¶9      Turning to the allegations of personal contacts between the appellant and the veteran, the administrative judge credited AOD J.B.'s testimony regarding the appellant's January 6, 2012 encounter with the veteran over that of the appellant, whom the administrative judge found "less than truthful." ID at 2, 13. The administrative judge noted that, while the appellant made it appear as though the encounter was a quick professional exchange in which she told the veteran she was unable to assist him and that it took place outside the AOD office, J.B. provided detailed, direct, and forthright testimony disputing the appellant's characterization. ID at 13 (citing IAF, Tab 4 at 140). The administrative judge found that J.B.'s testimony showed that she surprised the appellant and the veteran as they were exiting the AOD office together and that there was no professional reason for the veteran to be in the AOD office. ID at 13. The administrative judge found that the January 6 meeting and other meetings alluded to or planned in the Facebook conversations between the appellant and the veteran were inappropriate and violated MCM 05-002 because, at the very least, the meetings gave the appearance of a personal relationship. ID at 13. Based on her findings that the appellant's Facebook conversations and personal contacts with the veteran were inappropriate and violated MCM 05-002, the administrative

judge found that the agency proved the charge by preponderant evidence. ID at 14.

¶10      On review the appellant argues that the administrative judge erred in finding that she violated MCM 05-002. PFR File, Tab 1 at 5 of 12. Her argument concerning the charge essentially consists of a recitation of her hearing testimony that she did not engage in the inappropriate conduct listed in MCM 05-002. *Id.* at 7. In particular, the appellant states that, during the hearing, she testified that she never accepted any gifts from the veteran, the veteran had never been to her house, and she never provided the veteran a ride anywhere. *Id.* She further asserts that, although the veteran "made overtures of a sensual nature," she did not respond to them, and the agency "cannot prove that she was ever guilty of expressing sexual interest, affection or sensual or sexual touch to the veteran." *Id.*

¶11      This argument is unavailing. As the administrative judge stated in the initial decision, whether the appellant was dating the veteran or having a sexual relationship with the veteran is "beside the point." ID at 10. Paragraph 2.a(1) of MCM 05-002 states that the types of inappropriate behavior that could occur in social relationships are not limited to the specific examples of inappropriate conduct described therein. *See* IAF, Tab 4 at 72. Thus, contrary to the appellant's apparent assumption, the fact that she did not engage in the specific types of inappropriate conduct set forth in MCM 05-002 does not mean that she did not violate the policy.

¶12      On review the appellant also challenges the administrative judge's finding that her Facebook conversations with the veteran violated MCM 05-002. PFR File, Tab 1 at 6 (quoting ID at 13). The appellant asserts that she "simply engaged in Facebook conversations with the veteran" and treated him the same as she would treat anyone else. *Id.* at 7. She contends that the administrative judge's finding that the Facebook conversations "represented anything else" is not supported. *Id.*

¶13     As noted above, in the initial decision, the administrative judge rejected the appellant's efforts to characterize her relationship with the veteran as trivial. The administrative judge found that the appellant was not truthful by downplaying the nature of the relationship and attempting to characterize the relationship as consisting of innocent and trivial Facebook chatting. ID at 11. The appellant's contention on review that she simply engaged in Facebook conversations with the veteran is essentially mere disagreement with the administrative judge's credibility determinations and fact findings. Thus, it provides no reason to disturb the initial decision. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002); *Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133-34 (1980).

The administrative judge properly considered hearsay evidence.

¶14     The appellant also argues on review that the administrative judge erred by considering the veteran's statements in support of her removal despite the fact that she did not have an opportunity to confront or cross-examine the veteran because the agency did not produce him as a witness during the hearing. PFR File, Tab 1 at 7. The appellant asserts that, when hearsay evidence is admitted, "it is generally made by a third party who has nothing to gain or lose by making the statements and it has other indicia of being the truth." *Id.* at 8. The appellant contends that these circumstances are absent here because the veteran had "allusions [sic] of a relationship with [her] . . . which did not come to pass" as well as "a history of alleging sexual relations with other employees." *Id.* Therefore, the appellant asserts, the administrative judge should not have considered the veteran's statements. *Id.*

¶15     This argument is unpersuasive. As the appellant acknowledges, hearsay evidence is admissible in Board proceedings, and the assessment of the probative value of hearsay evidence necessarily depends on the circumstances of each case. *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-87 (1981). Factors affecting the weight to be accorded to hearsay evidence include: the consistency

of declarants' accounts with other information in the case; whether corroboration for statements can otherwise be found in the agency record; and the absence of contradictory evidence. *Id*. at 87.

¶16      In crediting the veteran's statements that he had a personal relationship with the appellant, the administrative judge found the veteran's allegations have merit, not only because of the Facebook conversations, but also because he was aware that Business Office Chief M.M., who was the appellant's supervisor as well as the proposing official, had asked her to write a statement about her relationship with him, and he knew what was in the statement. ID at 14 (citing IAF, Tab 4 at 50, 62-63). The administrative judge found that the only way the veteran could have known this information is if the appellant told him this, which is indicative of her having a personal relationship with him. *Id.* In light of these circumstances, we discern no error in the administrative judge's decision to credit the veteran's statements.

¶17      Moreover, while the administrative judge credited the veteran's statements that he had a relationship with the appellant, she did not rely solely on this hearsay evidence to sustain the charge. As discussed above, the initial decision shows that the administrative judge based her finding that the agency proved its charge on the hearing testimony, the documentary evidence, and the inherent implausibility of the appellant's denial of an inappropriate relationship with the veteran, not on the veteran's hearsay statement. ID at 2-14. Thus, we find that the administrative judge did not give improper weight to the veteran's statement.

<u>The administrative judge correctly found that the agency established nexus.</u>

¶18      The appellant does not offer any specific argument on review challenging the administrative judge's finding that the agency established a nexus between the sustained charge and both the appellant's ability to accomplish her duties satisfactorily and SORCC's ability to treat veterans. ID at 14-15, 23-25. Based on our review of the record, we discern no reason to disturb this finding.

<u>The administrative judge correctly found that the appellant failed to prove harmful procedural error.</u>

¶19    On review, the appellant renews her argument that the agency committed harmful procedural error by violating agency Directive 5021, Part I, Chapter 3, Section 7(d), which provides that "material which cannot be disclosed to the employee or to his or her representative cannot be used to support the reasons in a notice of proposed adverse action and must not be included in the evidence file." PFR File, Tab 1 at 8-9 (citing IAF, Tab 13 at 19 of 29); IAF, Tab 1 at 9. The appellant asserts that, because the agency redacted the veteran's name from the copy of the record it provided her representative in conjunction with her removal, the agency should not have used the veteran's testimony to support the reasons for her removal and should not have included that testimony in the evidence file. PFR File, Tab 1 at 9.

¶20    The administrative judge rejected this argument in the initial decision, finding that the appellant knew the identity of the veteran and that she has not alleged otherwise. ID at 21. Therefore, the administrative judge correctly found that, even if the agency violated its Directive, the appellant was not harmed and the evidence provided to her allowed her a full opportunity to make a meaningful reply. ID at 22.

<u>Further adjudication is necessary regarding the appellant's whistleblower reprisal claim.</u>

¶21    In an adverse action appeal, such as this, an appellant's claim of whistleblower reprisal is treated as an affirmative defense. *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 19 (2013). Once the agency proves its adverse action case by a preponderance of the evidence, the appellant must show by preponderant evidence that she engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action. *Id*.

¶22 A protected disclosure is a disclosure of information that the appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8)(A); *Chambers v. Department of the Interior*, 515 F.3d 1362, 1367 (Fed. Cir. 2008). The proper test for assessing whether a protected disclosure occurred is an objective one: Could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence one of the categories of wrongdoing identified in 5 U.S.C. § 2302(b)(8)(A)?[3] *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999).

¶23 The most common way of proving that a disclosure was a contributing factor in a personnel action is the "knowledge/timing" test. *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd*, 353 F. App'x 435 (Fed. Cir. 2009). Under that test, an appellant can prove the contributing factor element through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id*.

¶24 If the appellant shows that she made a protected disclosure and that the disclosure was a contributing factor in the agency's personnel action, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action in the absence of any protected disclosure. *Hamilton v. Department of Veterans Affairs*, 115 M.S.P.R. 673, ¶ 25 (2011). In determining whether an agency has made such a showing, the Board

---

[3] The reasonable belief test is set forth in section 103 of the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, § 103, 126 Stat. 1465, 1467, which has been codified at 5 U.S.C. § 2302(b)(13).

will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *See Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

¶25 As the administrative judge noted in the initial decision, ID at 16, during the proceedings below, the appellant alleged that, between November 7, 2011, and March 19, 2012, she made the following five disclosures to M.M.: (1) Lead AOD A.R. brought a laptop computer to work and watched movies during work hours; (2) A.R. and L.H., another agency employee, manipulated payroll records to allow each of them to take off from work on alternate Fridays; (3) A.R. was conducting his personal business during work time; (4) A.R. slapped M.M. on her bottom; and (5) J.B. would wrap herself in a blanket and sleep during her shift. IAF, Tab 1 at 10-15; Tab 14 at 16 of 135.

¶26 Regarding the first disclosure, the administrative judge noted that A.R. admitted during his hearing testimony that he watched a movie when working an 18-hour shift in order to stay awake. ID at 20. The administrative judge found that the appellant reasonably believed that this conduct violated a rule or regulation. ID at 20. Applying the three factors set forth in *Carr*, the administrative judge found that the agency showed by clear and convincing evidence that it would have removed the appellant absent this disclosure. ID at 20-21.

¶27 Addressing the remaining disclosures, the administrative judge found that "allegations two through five have no merit to them." ID at 18. More specifically, regarding disclosures two through four, the administrative judge found that the appellant failed to show that she had a reasonable belief that a violation of law, rule, or regulation occurred. ID at 18-19. In making this finding, the administrative judge credited the agency's witnesses' testimony

denying the conduct described in the disclosures over that of the appellant, and noted that the appellant failed to present any evidence supporting her allegations of wrongdoing prohibited by section 2302(b)(8)(A). ID at 18-19. Further, the administrative judge found that the facts alleged by the appellant in the third disclosure were "inherently improbable" and that it was more likely than not that the appellant "fabricated" the allegation in the fourth disclosure. ID at 18-19. As for the appellant's fifth disclosure, the administrative judge again found that there was no evidence to support the appellant's allegation and that the appellant failed to "meet her burden of proof that [J.B.] slept on the job . . . ." ID at 19.

¶28        In assessing whether the appellant's disclosures were protected, we find the administrative judge applied an incorrect legal standard by requiring the appellant to prove that the alleged misconduct actually occurred. The test for protected status is not the truth of the matter disclosed but whether it was reasonably believed. *See Special Counsel v. Spears*, 75 M.S.P.R. 639, 654 (1997). Therefore, the appellant's failure to prove that the alleged misconduct described in her disclosures occurred is not a valid basis for finding that those disclosures are not protected under 5 U.S.C. § 2302(b)(8). Rather, to prove that her disclosures are protected, the appellant need only show that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by her could reasonably conclude that: (1) the alleged misconduct occurred; and (2) the alleged misconduct evidences one of the categories of wrongdoing identified in 5 U.S.C. § 2302(b)(8)(A).[4]

---

[4] The Senate report accompanying the WPEA expressly disapproves of requiring appellants asserting whistleblower reprisal claims to prove that the alleged misconduct occurred. *See* S. Rep. No. 112-155, at 8 (2012), *reprinted in* 2012 U.S.C.C.A.N. 589, 598 (stating that "a cornerstone of 5 U.S.C. § 2302(b)(8) since its initial passage in 1978 has been that an employee need not ultimately prove any misconduct to qualify for whistleblower protection. All that is necessary is for the employee to have a reasonable belief that the information disclosed evidences a kind of misconduct listed in section 2302(b)(8).")

¶29    Regarding the applicable evidentiary standard for proving that disclosures are protected, under section 103 of the WPEA, which has been codified at 5 U.S.C. § 2302(b)(13), any presumption relating to the propriety of performance of a duty by an employee whose conduct is the subject of a whistleblower disclosure may be rebutted by "substantial evidence."[5] The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

¶30    In addition to applying the wrong evidentiary standard in assessing whether the appellant proved that her disclosures were protected, the administrative judge failed to make specific findings regarding the contributing factor element. To the extent that she addressed this element, her discussion was limited to her findings that: (1) all of the witnesses credibly testified that they did not see any of the Reports of Contact (ROCs) the appellant created (in which she described the alleged misconduct) while she was still employed by the agency; (2) there is nothing that shows the ROCs were made prior to the appellant receiving the Notice of Proposed Removal; and (3) there is no way to determine when the ROCs were drafted. ID at 20.

¶31    Significantly, however, the ROCs were not the only mechanism by which the appellant allegedly made her disclosures. In her hearing testimony, the appellant stated that, in addition to submitting ROCs to M.M. documenting the alleged misconduct, she also discussed the misconduct described in the ROCs

---

[5] The legislative history of the WPEA explains that this provision was enacted to ensure that no court would require "irrefragable proof" to rebut the presumption that "public officers and employees perform their duties in good faith and in accordance with the law and governing regulations." S. Rep. No. 112-155, at 7.

with M.M. at or around the time it occurred. Hearing Compact Disc (HCD) (testimony of the appellant). In that case, whether M.M. saw the ROCs is of no consequence, as M.M. was nonetheless aware of the appellant's disclosures several months before she issued the Notice of Proposed Removal.[6]

¶32    Because the administrative judge applied an incorrect legal standard in analyzing the appellant's disclosures and did not make any specific findings regarding the contributing factor element of the appellant's whistleblower reprisal claim, we vacate the findings of the initial decision pertaining to that claim and remand the case for further adjudication and issuance of a new initial decision. On remand, the administrative judge shall afford the appellant an opportunity for discovery on her affirmative defense of whistleblower reprisal and a supplemental hearing on that affirmative defense if she requests one. As to disclosures two through five,[7] the administrative judge shall make findings regarding what the appellant observed. Applying the disinterested observer standard, the administrative judge shall then determine whether the appellant reasonably believed that the alleged misconduct described in disclosures two through five occurred and, if so, whether the appellant reasonably believed that the alleged misconduct constituted wrongdoing as described in 5 U.S.C. § 2302(b)(8). For each disclosure that she finds protected, the administrative judge shall then determine whether the disclosure was a contributing factor to the appellant's

---

[6] In her hearing testimony, M.M. acknowledged that the appellant raised the issues of A.R. watching a movie at work and M.B. sleeping during her shift (i.e., the subject of disclosures one and five) during her November 2011 performance appraisal. HCD (testimony of M.M.). Thus, it is undisputed that the proposing official had knowledge of at least two of the appellant's five disclosures about 9 months before she issued the Notice of Proposed Removal.

[7] We agree with the administrative judge's finding that the appellant reasonably believed that the conduct described in her first disclosure, which A.R. admitted, constituted a violation of law, rule, or regulation. ID at 20. Consequently, on remand, the administrative judge shall find that disclosure protected.

removal and, if so, determine whether the agency proved by clear and convincing evidence that it would have removed the appellant absent her protected disclosure.

¶33    Because we are remanding the case for further proceedings regarding the appellant's affirmative defense of whistleblower reprisal, the administrative judge must "issue a new initial decision that addresses this affirmative defense and its effect on the outcome of the appeal, if any, giving appropriate consideration to any additional relevant evidence developed on remand." *Viana v. Department of the Treasury*, 114 M.S.P.R. 659, ¶ 8 (2010).   However, if the appellant does not prevail on that affirmative defense on remand, the administrative judge may adopt her prior findings in her new initial decision.  *See id.*, ¶ 8.

## ORDER

¶34    For the reasons stated above, we REMAND this appeal to the Western Regional Office for further adjudication consistent with this Opinion and Order.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.